```
                     UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| FRANK BELL (SCOTT), | |
| Plaintiff, | Civil No. 13-6955 (JBS) |
| v. | |
| CHRISTOPHER HOLMES, et al., | **OPINION** |
| Defendants. | |

**APPEARANCES:**

Frank Bell (Scott), *Pro Se*
\# 438148/235110-C
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

**SIMANDLE, Chief Judge**

Plaintiff, Frank Bell, confined at the South Woods State Prison, Bridgeton, New Jersey, submitted a civil Complaint alleging violations of his constitutional rights and an application to proceed *in forma pauperis* ("IFP"). Based on the submissions, the Court will grant Plaintiff's application pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

The Court must now review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief

from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that Plaintiff's Complaint should be dismissed for failure to state a claim.

## BACKGROUND

The following facts are taken from Plaintiff's Statement of Claims, attached to his Complaint (Docket Item 1 at pp. 10-11 of 13).

Plaintiff states that on February 5, 2012, he was a state prisoner at South Woods State Prison ("SWSP") when he was accused of exchanging contraband (drugs) with an approved visitor. In particular, he was accused of smuggling contraband in his buttocks. Because of the accusation, he was placed in a "dry cell" from February 6 through February 15, 2012. Plaintiff's clothes were taken except for boxer shorts, as was his mattress. Plaintiff states he was "unable to sleep due to the bright lights," and "could not bring [himself] to sleep on a cold concrete stained floor that reeked of urine and defecation."

Because he refused to sleep, Plaintiff "stayed awake on [his] feet for nine (9) days." As a result, Plaintiff suffered lower back pain and swelling of his feet, and when he received medical treatment, he was told to elevate his feet. Plaintiff refused to do so because he didn't have a mattress.

Plaintiff "personally [saw] the Administrator on 3 or 4 separate occasions within those nine days when [he] was treated inhumanely,"

however, the Administrator, presumably defendant Holmes, believed there was "probable cause" for the treatment, and failed to "stop the abuse."

Plaintiff was released after nine days and found not guilty of the institutional infraction relating to drugs, but found guilty of refusing to obey an order. Plaintiff states the refusal charge was retaliation by the officers to "justify their actions." During transportation to detention, Plaintiff notes that his feet were visibly swollen and he was unable to put on his shoes. He was examined by a nurse and admitted to the Emergency Care Unit for four days of bed rest. After his stay in the Emergency Care Unit, Plaintiff was taken to administrative segregation to serve 90 days on the "charge [he] didn't deserve." Plaintiff contends that he did not disobey staff.

Plaintiff argues that because of the "draconian conditions" he was subjected to, he developed a sleeping disorder and back and foot pain, and his visitor, his girlfriend, is permanently banned from the institution, causing a strain on their relationship.

Plaintiff seeks monetary relief and for the visitation ban to be lifted (Complaint, Relief, ¶ 7). He names as Defendants Christopher Holmes, the former Administrator of SWSP, the Department of Corrections, SWSP, and the State of New Jersey.

## DISCUSSION

1. **<u>Standards for a *Sua Sponte* Dismissal</u>**

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 28 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e) and § 1915A because Plaintiff is a prisoner and is proceeding as an indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.

4

matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

2. **Section 1983 Actions**

   A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

   > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution

---

2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### 3. Plaintiff's Complaint Must Be Dismissed.

#### A. Immune Defendants

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. *See, e.g., Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Rivers v. SCI Huntingdon Prison*, 532 F. App'x 91 (3d Cir. 2013). Thus, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against that state or any one of its agencies. *See Schacht, supra; Rivers, supra*. Section 1983 does not override a state's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979); *Ellington v. Cortes*, 532 F. App'x 53, 56 (3d Cir.

2013).

Here, Defendants State of New Jersey, New Jersey Department of Corrections ("NJDOC"), and South Woods State Prison, are state entities or agencies of the State of New Jersey. *See N.J. Stat. Ann.* 30:1B (establishing "in the Executive Branch of the State Government a principal department which shall be known as the Department of Corrections."); *Wilson v. Haas*, No. 11-7001, 2012 WL 6761819, at *5 (D.N.J. Dec. 28, 2012) (explaining that "New Jersey state prison facilities are entitled to immunity from suit in federal court under the Eleventh Amendment and, therefore, they are not 'persons' within the meaning of § 1983.") (citing *Grabow v. Southern State Correctional Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989); *Cf. Bey v. Pennsylvania Dept. of Corr.*, 98 F. Supp.2d 650, 657 (E.D. Pa. 2000) (finding that State correctional institutions were arms of the state because those entities were run exclusively by and through the State's Department of Corrections, and therefore they were immune under the Eleventh Amendment from claims raised in a prisoner's § 1983 action). Accordingly, the Complaint against these defendants is barred by the Eleventh Amendment and should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).[2]

---

[2] In addition, the Complaint must be dismissed as against these Defendants because both they are not cognizable as "persons" for the purposes of a § 1983 suit. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70-71 and n.10 (1989); *Duran v. Merline*, 923 F. Supp.2d 702, 2013 WL 504582 at *20, n.4 (D.N.J. 2013) (citing *Grabow*,

7

B.  <u>No Constitutional Violations</u>

    1.  *Visitation*

Plaintiff states that his girlfriend has been banned from visiting him due to the charges that he received contraband from her during a visit. He seeks to have her visitation rights reinstated.

It is long-established that there is no absolute constitutional right to visitation. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (there is no substantive due process right to "unfettered visitation"); *Neumeyer v. Beard*, 301 F. Supp.2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005) (convicted prisoners and their families and spouses have no "constitutional right to visitation" other than with legal counsel); *see also White v. Keller*, 438 F. Supp. 110, 115-18 (D. Md. 1977) (holding that neither prisoners nor prospective visitors have constitutional right to prison visitation), *aff'd*, 588 F.2d 913 (4th Cir. 1978).

The Supreme Court has recognized, time and again, that the Constitution does not require that inmates be allowed visits when prison administrators determine, in their sound discretion, that such visits jeopardize the security of the institution or conflict with an orderly administration of the same for one reason or another.

---

726 F. Supp. at 538-39 (the New Jersey Department of Corrections is not a person under § 1983)).

*See Block v. Rutherford*, 468 U.S. 576, 589 (1984).[3]

To the extent that Plaintiff's challenge could be construed as a First Amendment claim, his allegations are facially deficient since he does not allege that he was barred from all contacts with his girlfriend, including contacts by mail and telephone. *See Thorne v. Jones*, 765 F.2d 1270, 1273-74 (5th Cir. 1985) (reading the challenge as a First Amendment attack and finding no associational right to visitation); *see also Tormasi v. Hayman*, 2011 WL 890676 (D.N.J. Mar. 14, 2011) (a potentially viable First Amendment challenge may arise solely out of the factual pattern showing that the inmate was barred from every and all contact with his family and friends, regardless of the means of communication).

In this case, the visitation ban on Plaintiff's girlfriend does not rise to the level of a constitutional violation in order to warrant relief under § 1983. Plaintiff's visitation claim is

---

[3] The Supreme Court elaborated on that holding, pointing out that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003). The Court of Appeals has similarly concluded that a legitimate prohibition on visitation is acceptable even if it implicates a fundamental right, such as family relationships. *See Inmates of Allegheny County v. Pierce*, 612 F.2d 754, 759 (3d Cir. 1979). Also, self-classification as a "fiancé" or "fiancée" of an inmate cannot salvage one's claims. *See Toney v. Walsh*, 2013 WL 139263 (M.D. Pa. Jan. 10, 2013) (dismissing an inmate's challenges based on the disciplinary finding of infraction as a result of a visit where an officer determined that the inmate's fiancée was touching him in a sexually inappropriate manner and barring the alleged fiancée from visiting the inmate indefinitely).

dismissed for failure to state a claim.

### 2. *Conditions and Medical Treatment*

The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Dev.*, 621 F.3d 249, 256 (3d Cir. 2010)(quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)), *cert. denied*, 131 S. Ct. 1614 (2011). That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 835 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1982)).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Counterman v. Warren Cnty. Corr. Fac.*, 176 F. App'x 234, 238 (3d Cir. 2006). The objective component requires that the deprivation sustained by a prisoner be sufficiently serious because only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A plaintiff may satisfy the objective component of a

conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *See Rhodes*, 452 U.S. at 347–48. However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. *See id.* at 347.

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. at 835 (1994); *Wilson*, 501 U.S. at 303. This component may be fulfilled by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio*, 968 F. Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff complains that during the disciplinary process wherein he was accused of smuggling contraband, he was housed in a

"dry cell" from February 6, 2012 to February 15, 2012. His mattress was taken and he refused to sleep on the floor, resulting in medical injuries. Plaintiff pleads that during this time, he was seen by Administrator three or four times, and that he received medical care for his complaints, although he was not released from the cell until the charges were resolved.

Plaintiff's allegations that he was subjected to a short-term "dry cell" confinement while he was awaiting his administrative hearing do not suggest that: (1) he was deprived of the minimal civilized measure of life's necessities; or (2) he faced a substantial risk of harm to his health or safety, and that prison officials were aware of this risk but deliberately ignored it. Specifically, the Complaint neither suggests that Plaintiff's placement in a "dry cell" posed a substantial risk of harm to Plaintiff's health or safety or put him at risk, nor does it suggest that any such risk was known to, but deliberately ignored by prison officials. *See Young v. Quinlan*, 960 F.2d 351, 364-65 (3d Cir. 1992).

In sum, Plaintiff's Complaint states nothing more than the mere fact of Plaintiff's discomfort with being temporarily placed in the "dry cell."  The Complaint likewise does not allege that the length of time for Plaintiff's confinement in the dry cell was for longer than needed for its intended purpose, namely, the collection and preservation of evidence secreted internally.  Plaintiff's medical

12

needs while housed in the "dry cell" were addressed, as Plaintiff was examined, told to elevate his feet, and refused to do so. Plaintiff's allegations do not amount to a cognizable constitutional claim, and will be dismissed.

## CONCLUSION

For the reasons stated above, Plaintiff's complaint must be dismissed for failure to state a claim upon which relief may be granted. The Court, after careful review, is not certain that an amendment to this Complaint would be futile, and so the Plaintiff will have an opportunity to file an amended complaint if he is able to address the issues spelled out in this Opinion. The dismissal is without prejudice to Plaintiff filing a motion to reopen and attaching an Amended Complaint to address the deficiencies set forth in this Opinion, within forty-five (45) days hereof.

An appropriate Order follows.


　　　　　　　　　　　　　　　　　　**s/ Jerome B. Simandle**
　　　　　　　　　　　　　　　　　　JEROME B. SIMANDLE, Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court


Dated:   **February 23, 2015**